UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT V. PRESSON, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:20 CV 516 SRW |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant(s). | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in Support of the Complaint. ECF No. 22. Defendant filed a Brief in Support of the Answer. ECF No. 32. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

**I.      Factual and Procedural Background**

On November 9, 2017,[1] Plaintiff Robert V. Presson protectively filed an application for disability insurance benefits ("DIB") under Title II, 42 U.S.C. §§ 401, *et seq*. Tr. 188-94.

---

[1] The ALJ indicated Plaintiff filed his application for DIB on September 28, 2017; however, review of the record appears to indicate the application was filed on November 9, 2017. *See* Tr. 188.

1

Plaintiff's application was denied on initial consideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 107-17, 121-26, 129-42, 145-76.

Plaintiff, with the assistance of an attorney, appeared for an initial hearing on May 3, 2019. Tr. 39-101. Plaintiff testified concerning his disability, daily activities, functional limitations, and past work. *Id*. The ALJ also received testimony from vocational expert ("VE") J. Stephen Dolan, M.A., C.R.C. *Id*. On August 13, 2019, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 7-32. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 185-87. On February 16, 2020, the Appeals Council denied Plaintiff's request for review. Tr. 1-6. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

**II.      Legal Standard**

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether "the claimant has a severe impairment . . . which significantly limits [claimant's] physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (quoting 20 C.F.R. § 416.920(c)). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative

assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If the ALJ determines the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary

sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016) (quotation omitted).

### III. The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2022, and Plaintiff has not engaged in substantial gainful activity since the alleged onset date of June 30, 2016. Tr. 12. Plaintiff has the severe impairments of fibromyalgia, degenerative disc disease, asthma, osteoarthritis (hands, toe, knee), tendinitis of the left shoulder, and chronic fatigue. Tr. 13-14. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 14. The ALJ found Plaintiff has the following RFC:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that he should have a sit/stand option (standing 5 minutes twice/hour while remaining on task at the workstation). The [Plaintiff] can never climb ladders, ropes, or scaffolds, and he can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The [Plaintiff] can frequently reach in all directions with his right and left arms, and can frequently handle and finger. The [Plaintiff] can never work at unprotected heights, never around moving mechanical parts, and can be exposed no more than occasionally to humidity and wetness, dust, odors, fumes and pulmonary irritants, vibration, and temperature extremes. The [Plaintiff] is capable of sustaining frequent interaction with coworkers, supervisors and the public.

Tr. 14-25.

The ALJ found Plaintiff is able to perform his past relevant work as a computer system analyst because it does not require the performance of work-related activities precluded by his RFC. Tr. 25-27. In the alternative, the ALJ determined Plaintiff is also capable of performing other jobs existing in the national economy, including Cashier (*Dictionary of Occupational Titles ("DOT")* No. 211.462-010) and Food and Beverage Clerk (DOT No. 209.567-014). The ALJ concluded Plaintiff was not under a disability from June 30, 2016 through August 13, 2019, the date of the decision. *Id.* at 27.

## IV. Discussion

Plaintiff argues the ALJ incorrectly determined that he could perform sedentary work with postural and environmental limitations. Specifically, Plaintiff takes issue with the ALJ's failure to consider obstructive sleep apnea ("OSA") as a severe impairment at Step Two of the analysis, and the ALJ's failure to include limitations in the RFC related to his chronic fatigue.

**A. The ALJ's Evaluation of Plaintiff's Obstructive Sleep Apnea**

Plaintiff argues the ALJ erred in classifying his OSA as a non-severe impairment for the reason that it was "well controlled on CPAP therapy." Tr. 13, ECF No. 22, at 8. The Court agrees with Plaintiff's contention that substantial evidence in the record as a whole does not support the ALJ's conclusion that his OSA was well controlled with CPAP treatment. Thus, the Court finds the ALJ erred by failing to properly evaluate the severity of Plaintiff's OSA at Step Two. The Court will remand this case for reconsideration of whether Plaintiff's OSA is a severe or non-severe impairment.

At Step Two of the evaluation process, an ALJ must determine if a plaintiff suffers from a severe impairment. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). The plaintiff bears the

6

burden of proving his impairment or combination of impairments is severe, but the burden is not a heavy one, and any doubt concerning whether the showing has been made must be resolved in favor of the plaintiff. *Id.*; *Dewald v. Astrue*, 590 F. Supp. 2d 1184, 1200 (D.S.D. 2008). "Severity is not an onerous requirement for the [plaintiff] to meet, but it is also not a toothless standard[.]" *Kirby*, 500 F.3d at 707. A severe impairment is an impairment or combination of impairments that significantly limits a plaintiff's physical or mental ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 404.1521. An impairment is not severe if it amounts to only a slight abnormality and does not significantly limit the plaintiff's physical or mental ability to do basic work activities. *Kirby*, 500 F.3d at 707; 20 C.F.R. § 404.1521(a).

In the Court's review of the record, the ALJ's Step Two determination that Plaintiff's OSA was not a severe impairment because it was "well controlled on CPAP therapy" is contradicted by relevant treatment notes and the ALJ's own citations to the medical record. Specifically, in 2016 Plaintiff underwent an outpatient balloon sinus plasty procedure. He noted "improvement after that procedure but the problem still persists." Tr. 670. On May 4, 2018, Dr. Oscar Schwartz, Plaintiff's treating physician for sleep issues, wrote he was "[h]istorically . . . unable to use a CPAP device," and he did "not believe going back to that would be of any benefit." Tr. 499. Treatment notes explain that Plaintiff was intolerant of CPAP therapy because of "mask leaks, inability to get the mask to fit properly, discomfort from headgear, disturbed or interrupted sleep, CPAP restricted movements during sleep, claustrophobic associations, an unconscious need to remove the CPAP at night, [and] cumbersome and skin sensitivity." Tr. 508, 511. The medical record also indicates Plaintiff "has not been wearing his CPAP since 2014 due to chronic sinus and bronchitis issues." Tr. 520.

On January 15, 2019, Plaintiff asked Dr. Schwartz if he should try CPAP therapy again, but Dr. Schwartz recommended against resuming therapy until his nasal congestion and chronic pain issues were addressed. Tr. 501-02. On February 7, 2019, Plaintiff's ENT, Dr. Robert O'Bert, recommended a septoplasty which he noted "should improve his tolerance of CPAP therapy." Tr. 675. Plaintiff agreed to the procedure, and it was performed later in February of 2019. On March 5, 2019, Plaintiff presented one week after the septoplasty and reported he was "healing well and [al]ready notice[d] a significant improvement in his symptoms." Tr. 668. The medical record from March 5 does not indicate Plaintiff was able to tolerate CPAP therapy post-septoplasty or that he was advised by a medical provider to restart the therapy. *Id.* The medical record notes on March 5 Plaintiff still had splints from the procedure which the doctor removed that day. *Id.* Plaintiff would not have been able to use the CPAP with splints in his nose.

Notably, in the section of the ALJ's opinion formulating Plaintiff's RFC, the ALJ contradicted her Step Two determination that Plaintiff's OSA was well controlled on CPAP therapy by stating "he could not tolerate the CPAP machine due to sinus issues" and citing to the aforementioned medical records reflecting Plaintiff's historical intolerance of CPAP therapy. Tr. 22-23. The ALJ appeared to fault Plaintiff for his failure to resume CPAP therapy after the septoplasty but did not cite to any medical records indicating he was advised to recommence the therapy. Tr. 22.

Because substantial evidence in the record as a whole does not support the ALJ's conclusion that Plaintiff's OSA was well-controlled on CPAP therapy at any time between his alleged onset date of June 30, 2016 and August 13, 2019, or that he was explicitly advised to begin CPAP therapy after his 2019 septoplasty procedure and was directly non-compliant, the

Court will reverse and remand this case in order for the ALJ to reconsider whether Plaintiff's OSA diagnosis was a severe or non-severe impairment.

The Court reminds the ALJ that a Step Two determination of non-severe is not necessarily the end of the inquiry: "When a claimant has multiple impairments, 'the Social Security Act requires the Commissioner to consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient medical severity to be disabling.'" *Gann v. Colvin*, 92 F. Supp. 3d 857, 881 (N.D. Iowa 2015) (quoting *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000)). In evaluating whether Plaintiff can perform his past relevant work as a computer system analyst, or in the alternative, a cashier or food and beverage clerk, the ALJ must also consider whether his OSA, in combination with his other impairments, may be considered disabling.

**B. The ALJ's Consideration of Plaintiff's Chronic Fatigue**

Plaintiff further asserts the ALJ erred by failing to include limitations in his RFC related to chronic fatigue. In support of this argument, Plaintiff cites to various instances in the record where he reported symptoms of fatigue, poor energy, and difficulty sleeping, as well as treatment notes documenting his chronic fatigue diagnosis. ECF No. 22, at 3-4.

The ALJ identified Plaintiff's chronic fatigue as a severe impairment at Step Two. Tr. 13. In formulating Plaintiff's RFC, the ALJ acknowledged Plaintiff's subjective complaints of fatigue, including his Function Report wherein Plaintiff reported "extreme fatigue" caused by chronic pain. Tr. 15, 237. The ALJ also cited to treatment notes and a medical source statement from his rheumatologist, Dr. Richard DiValerio, evidencing Plaintiff's diagnosis of chronic fatigue.[2] Tr. 16-19, 24, 453-55, 481-84, 488-90, 556, 682.

---

[2] The Court notes Plaintiff also denied symptoms of fatigue on February 16, 2016, February 15, 2017, March 16, 2017, May 18, 2017, January 11, 2018, July 2, 2018, and February 7, 2019. Tr. 327, 338, 483, 486, 534, 673. On

The ALJ then formulated an RFC which limits Plaintiff to sedentary work with limitations, including a sit/stand option; no climbing of ladders, ropes, or scaffolds; only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, or crawling; frequent reaching in all directions with his right and left arms; frequent handling and fingering; no exposure to unprotected heights or moving mechanical parts; occasional exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, vibration, or temperature extremes; and frequent interaction with coworkers, supervisors and the public. Tr. 14. As the Plaintiff argues, the ALJ did not identify or attribute any limitations to his chronic fatigue diagnosis.

Although the ALJ cited generally to treatment records acknowledging Plaintiff's complaints and diagnosis of chronic fatigue, the determination is devoid of an explanation regarding the specific impact of chronic fatigue on his RFC. For example, the ALJ found Dr. DiValerio's April 10, 2019 medical source statement to be unpersuasive. Tr. 24-25. Within that statement, Dr. DiValerio opined that Plaintiff's fibromyalgia, chronic pain syndrome, *and* chronic fatigue would affect his ability to work at a regular job on a sustained basis. Tr. 682-83.

The ALJ discounted Dr. DiValerio's opinion only as to Plaintiff's fibromyalgia and pain, finding his treatment notes contradicted his medical source statement because they generally indicated "no swelling, no weakness (other than occasional decreased grip strength), no muscle spasm, and normal gait (no mention of instability or poor coordination)" as well as mild MRI findings.[3] Tr. 24. The Court finds it problematic, however, that the ALJ did not address Dr.

---

January 15, 2019, Plaintiff reported feeling "less tired and sleepy" since he obtained an oral appliance. Tr. 500. These records were not included within the ALJ's opinion.

[3] The Court notes that "[t]his lack of objective clinical signs is not unusual in patients with fibromyalgia." *Lynn S. v. Saul*, No. 4:19-CV 3198-JMB, 2021 WL 694907, at *11 (E.D. Mo. Feb. 23, 2021) (quoting *Clarambeau v. Saul*, No. 4:19-CV-04170-VLD, 2020 WL 3097771, at *24 (D.S.D. June 11, 2020) ("[t]he musculoskeletal and neurological examinations are normal in fibromyalgia patients, and there are no laboratory abnormalities) (quoting Harrison's Principles of Internal Medicine, at 2056 (16th ed. 2005)).

DiValerio's medical source statement opinion as to how Plaintiff's chronic fatigue affected his ability to work at a regular job on a sustained basis. The ALJ did not discuss whether the limitations Dr. DiValerio attributed to Plaintiff's chronic fatigue were persuasive, and if not, what medical evidence in the record contradicted his opinion. Social Security Administration regulations provide that an RFC assessment "must always consider and address medical source opinions," and "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (Soc. Sec. Admin. July 2, 1996).

    The Court will remand this case to the Commissioner for clarification. Upon remand, the ALJ can either include a limitation in Plaintiff's RFC that accounts for Plaintiff's severe impairment of chronic fatigue, or provide an explanation supported by substantial medical evidence as to why a limitation for the severe impairment is not warranted. *See, e.g., Detterman v. Berryhill*, No. 4:16-CV-1341-CDP, 2017 WL 2535705, at *5 (E.D. Mo. June 12, 2017) (finding error in ALJ's failure to explain why no mental RFC limitations were included within decision); *Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (unpublished) (reversing and remanding where an ALJ did not include any limitations at Step Five for a severe impairment because "[a]t the very least, the ALJ should have explained how a 'severe' impairment at step two became 'insignificant' at step five"). "While the ALJ need not present [her] RFC findings in rigid, bullet point format with each limitation followed by supporting evidence, the RFC assessment must include some narrative discussion describing how the evidence supports each conclusion so the ALJ does not overlook any limitations." *Baca v. Colvin*, No. 4:13-CV-1562-RWS, 2014 WL 4627198, at *11 (E.D. Mo. Sept. 15, 2014) (citing *Chaplin v. Astrue*, No. 4:09-CV-1384-TCM, 2010 WL 3843643, at *15 (E.D. Mo. Sept. 27,

2010) (citations omitted)). The Court is not suggesting such a limitation will render Plaintiff disabled. That decision is left to the ALJ upon further review.

V. CONCLUSION

The Court finds the ALJ's determination regarding Plaintiff's OSA as a non-severe impairment because it is "well controlled on CPAP therapy" is not supported by substantial evidence on the record as a whole. On remand, the ALJ is directed to reconsider Plaintiff's severe impairments at Step Two; further develop the medical record if necessary; and then proceed through the sequential evaluation process before issuing a new decision. The Court is aware that upon remand, the ALJ's decision as to non-disability may not change after addressing the deficiencies noted herein, but the determination is one the Commissioner must make in the first instance. *See Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (when a plaintiff appeals from the Commissioner's denial of benefits and the denial is improper, out of an abundant deference to the ALJ, the Court remands the case for further administrative proceedings); *Leeper v. Colvin*, No. 4:13-CV-367 ACL, 2014 WL 4713280 at *11 (E.D. Mo. Sept. 22, 2014) (ALJ has the duty to make the disability determination).

The ALJ should also explain the link between the medical evidence and the RFC findings as they relate to Plaintiff's chronic fatigue. The ALJ should include any additional limitations in the RFC that provides such a link.

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under 42 U.S.C. § 1383(c)(3) and Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

So Ordered this 22nd day of June, 2021.

*/s/ Stephen R. Welby*
STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE